UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00135-TBR

MARGARET MACGLASHAN                                                                  Plaintiff

v.

ABS LINCS KY, INC. D/B/A                                                             Defendant
CUMBERLAND HALL HOSPITAL

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant ABS Lincs KY, Inc.'s motion for summary judgment. (Docket #48). Plaintiff Margaret Macglashan's has responded. (Docket #53). Defendant has replied. (Docket #72). These matters now are ripe for adjudication. For the reasons that follow, Defendant's motion for summary judgment (Docket #48) is GRANTED in part and DENIED in part.

BACKGROUND

This case arises from the termination of Margaret MacGlashan as an employee of ABS Lincs KY, Inc., doing business as Cumberland Hall Hospital ("Cumberland Hall").

On June 6, 2013, MacGlashan was working as a nurse manager when she was notified that a patient with a known sulfa allergy had been given multiple doses of a sulfa-based antibiotic. (Docket #1). MacGlashan had the patient transferred to Blanchfield Army Community Hospital ("Blanchfield Hospital") for immediate medical care. MacGlashan then met with Cumberland Hall's CEO Jim Spruyt and Director of Nursing Sharon Shemwell to discuss the medical error. Spruyt instructed MacGlashan to

check on the Plaintiff's status at Blanchfield Hospital. That evening, MacGlashan called Blanchfield Hospital and texted Spruyt what she had learned. (Docket #1).

The parties disagree about what occurred next. MacGlashan alleges she carried out Spruyt's order to investigate by taking the patient's medical records home to study and then personally visiting the patient the next day at Blanchfield Hospital. She claims Spruyt and Cumberland Hall became concerned about the negative attention her investigation might attract and suspended her. Plaintiff claims she was fired on the false allegation that she violated HIPAA. (Docket #24, 25). Conversely, Cumberland Hall argues that MacGlashan was only authorized to call Blanchfield Hospital on the evening of June 6, 2013. Cumberland Hall claims MacGlashan unilaterally chose to personally visit the patient and that Blanchfield Hospital complained about this visit to Cumberland Hall. Cumberland Hall also says that MacGlashan had taken portions of the patient's medical records without authorization. Cumberland Hall argues that MacGlashan violated HIPAA and Cumberland Hall fired her for this reason. (Docket #21, 35).

Cumberland Hall suspended MacGlashan on June 7, 2013. On June 13, MacGlashan received a call from Shemwell and Human Resources Manager Kelly Hagy. Hagy informed MacGlashan that Cumberland Hall had decided to fire MacGlashan on the grounds that she violated HIPAA. (Docket #1). Several months later Cumberland Hall reported to Health and Human Services that stated a "nurse" had violated HIPAA.

MacGlashan claims she was wrongfully terminated. MacGlashan also claims she has been defamed by Cumberland Hall's internal discussions that she violated HIPAA, by the report to Health and Human Services, and also that she has been compelled to repeat

2

Cumberland Hall's false claim that she violated HIPAA when she applied for other nursing positions. Cumberland Hall has moved for summary judgment on all claims.

## STANDARD

Summary judgment is proper if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

DISCUSSION

Cumberland Hall has requested summary judgment on all of MacGlashan's claims. The Court will first address MacGlashan's (I) claim for retaliation; then her (II) claim for public policy wrongful discharge; then her (III) claim for defamation. Finally, the Court will address (IV) the necessity of expert testimony to prove emotional distress.

## I. Retaliation.

The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 797 (Ky. 2004). A plaintiff may meet this burden by showing she (1) "engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and adverse employment action." *Colorama, Inc. v. Johnson*, 295 S.W.3d 148, 152 (Ky. App. 2009).

Cumberland Hall argues MacGlashan (A) did not engage in a protected activity; (B) that Cumberland Hall was unaware of any protected activity; and (C) MacGlashan cannot establish a causal connection between her protected activity and her termination.

### A. Engaged in a protected activity.

A health care employee "who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency." KRS § 216B.165(1). An employee who makes such a report is protected from reprisal. KRS § 216B.165(3).

Cumberland Hall presents two arguments for why MacGlashan did not make a report, neither of which is persuasive. First, Cumberland Hall argues MacGlashan did not make the initial report, but instead the incident was discovered and first reported by nurse Lisa Lewis. (Docket #48). Cumberland Hall also argues that it was Sharon Shemwell, the Acting Director of Nursing, who first reported the incident to Spruyt and Cumberland Hall's management. However, there is no requirement in KRS § 216B.165(1) that an employee who reports an unsafe situation be the first or only employee to make a report. The statute protects an "employee who in good faith reports" – not the first employee who reports. KRS § 216B.165(1), (3). The Court will not insert a restrictive clause into the statute that does not exist. *Gilbert v. Commonwealth*, 291 S.W.3d 712, 716 (Ky. App. 2008) ("If the language is clear and unambiguous and if applying the plain meaning of the words would not lead to an absurd result, further interpretation is unwarranted"). Statutes designed to protect the public should be interpreted liberally. *De Hart v. Gray*, 245 S.W.2d 434, 435-36 (1952); *see also* KRS § 446.080 ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature").

Cumberland Hall next argues that MacGlashan did not actually make a report, but was only preparing a report at the time she was fired. (Docket #48). It is true that MacGlashan was preparing a written report which she did not complete before being fired. However, MacGlashan also made an oral[1] report to Spruyt and Shemwell the day after the incident. Both Spruyt and Shemwell confirmed that Spruyt ordered MacGlashan to obtain information about the incident and the following morning MacGlashan made an

---

[1] KRS § 216B.165(1) specifically includes protection for an employee who makes an "oral or written report of the problem."

5

oral report to Spruyt and also delivered her handwritten notes. (Docket #48, Ex. 3, pg. 20, Docket #53, Ex. 3, pg. 50-51). This oral report satisfies KRS § 216B.165(1). The fact that MacGlashan did not complete her second, written report is irrelevant.[2]

### B. Cumberland Hall's knowledge of the report.

Cumberland Hall next argues that it was unaware of MacGlashan's report and therefore she has not shown the second element of a retaliation claim. (Docket #48). This argument presumes that MacGlashan's only report was the written report she was preparing but did not file before she was fired. As discussed above, MacGlashan's oral report to Spruyt satisfies KRS § 216B.165(1). This report was made to the CEO of Cumberland Hall and therefore Cumberland Hall had notice of MacGlashan's report.

### C. Causal Connection.

Finally, Cumberland Hall argues there is no causal connection between MacGlashan's report and her termination. The strongest evidence of a causal connection in this case is the brief time – less than one week – between when MacGlashan made her report and when she was terminated.

Each party cites to case law disputing whether temporal proximity, without more, is sufficient to show a causal connection. The Sixth Circuit has acknowledged "confusion" in its precedent. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (citation omitted). The *Mickey* court reconciled prior cases to state:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is

---

[2] This case is also distinguishable from *Foster*, which Cumberland Hall relies upon. *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629 (Ky. App. 2013). In *Foster*, two nurses were allegedly fired for sending an anonymous e-mail which reported unsafe practices. The second nurse's retaliation claim was dismissed because she did not actually send the e-mail and therefore did not make a report.

6

> significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

The *Mickey* court also noted that other Circuits found in "rare cases, temporal proximity alone may suffice to show a causal connection." *Id*; *see also Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505 (6th Cir. 2014) ("temporal proximity alone can be enough").

In this case, the time between when MacGlashan made her report and when she was terminated was relatively abrupt. MacGlashan made her report on June 7, 2013. That same day she was suspended. On June 13, MacGlashan was terminated. These "immediate" adverse actions alone demonstrate causal connection. *Mickey*, 516 F.3d at 525 ("In those limited number of cases – like the one at bar – where an employer fires an employee immediately after learning of a protected activity, we can infer a causal connection between the two actions, even if [the plaintiff] had not presented other evidence of retaliation").

## II. Wrongful Discharge.

MacGlashan asserted she was wrongfully discharged pursuant both to Kentucky statutory law and Kentucky public policy. (Docket #1). This Court previously commented that the statutory wrongful discharge claim may preempt the wrongful discharge claim based on public policy. (Docket #11). However, the Court did not rule on that issue as the parties had not briefed the issue at that time. The parties have now briefed the issue. The Court finds there is no preemption.

A claim for wrongful discharge is usually based on a statute which expressly

7

prohibits certain employer behavior. However, a claim for wrongful discharge may also be based on public policy, provided that public policy is "well-defined." *Stanley v. Our Lady of Bellefonte Hosp., Inc.*, 2012 U.S. Dist. LEXIS 134550 *15-16 (E.D. Ky. 2012). This is an exception to the general rule that an employer may terminate an employee "for good cause, for no cause, or for a cause some might view as morally indefensible." *Grzyb v. Evans*, 700 S.W.2d 399, 400 (Ky. 1985).

"In the context of a wrongful discharge case, preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010). In other words, if a statute would support a public policy wrongful discharge claim but also establishes a statutory wrongful discharge claim, the statutory claim preempts the claim based on public policy. "Where preemption occurs, the employee's recovery is restricted to the statute's remedial scheme." *Stanley*, 2012 U.S. Dist. LEXIS 134550 at *16 ("preemption does not depend upon whether a plaintiff regards the statute's remedy as 'adequate'; it depends solely on whether the statute provides a plaintiff any remedy at all).

MacGlashan's public policy wrongful discharge claim is not preempted because KRS § 216B does not create a statutory cause of action nor does it provide a remedy. An employer is prohibited from discriminating against an employee who reports unsafe medical practices by KRS § 216B.165(3). No portion of KRS § 216B.165 or of KRS § 216B generally provides a cause of action or remedy. Instead, MacGlashan is able to maintain a suit for violation of KRS § 216B.165(3) because KRS § 446.070 provides: "A

person injured by the violation of **any statute** may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." (emphasis added). However, KRS § 446.070 is merely a gap-filler statute meant to "remove any doubt that might arise as to the right of a person for whose protection a statute was passed to recover for a violation of that statute, where the statute was penal in its nature, **or where by its terms the statute did not prescribe the remedy for its enforcement or violation**." (emphasis added) *Hackney v. Fordson Coal Co.*, 19 S.W.2d 989, 990 (Ky. App. 1929).

In comparison, those cases in which a public policy wrongful discharge claim was preempted by a statutory claim are distinguishable because the same statutory scheme expressly created a cause of action and remedy. *Parks v. UPS Supply Chain Solutions, Inc.*, 2014 U.S. Dist. LEXIS 13538 *40-41 (E.D. Ky. 2014) (collecting cases). For instance, the Kentucky Civil Rights Act prohibits several discriminatory practices. *See e.g.* KRS § 344.040. The same statutory scheme provides a cause of action and remedy: "Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit." KRS § 344.450; *see also Broadway v. Sypris Techs., Inc.*, 2011 U.S. Dist. LEXIS 23989 *12 (W.D. Ky. 2011).

Since no portion of KRS § 216B provides a cause of action or remedy, the Court finds MacGlashan's public policy wrongful discharge claim is not preempted. *See also Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629 (Ky. App. 2013) (allowing a nurse who did not meet the criteria to file a statutory claim based on KRS § 216B.165 to nonetheless maintain a claim for wrongful termination based on violation of the public

9

policy underpinning KRS § 216).

### III. Defamation.

The four elements of a defamation claim are: (1) defamatory language, (2) about the plaintiff, (3) which is published, and (4) which causes injury to reputation. *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. App. 1981); *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky. App. 2011).

Cumberland Hall argues (A) the report to Health and Human Services did not contain defamatory language; (B) Cumberland Hall is not liable for MacGlashan's self-publication; and (C) Cumberland Hall's statements are protected by a qualified privilege.

### A. Report to Health and Human Services.

For a plaintiff to maintain a defamation claim, the plaintiff must show that the defamatory language reasonably identifies the plaintiff. *Bowling v. Smith*, 2003 Ky. App. Unpub. LEXIS 500 *8 (Ky. App. 2003) (unpublished) ("While it is not necessary that the allegedly defamatory comments refer specifically to a plaintiff by name, it must be shown that the comments pertain directly to a particular individual whose identify can be ascertained from the text and context of the publication"); *see also Pullman Indus. v. Mfrs. Enameling Corp.*, 15 Fed. Appx. 297 (6th Cir. 2001) (unpublished).

The report to Health and Human Services ("HHS") describes a "nurse" that committed a HIPAA violation. Considering Cumberland Hall employs many nurses, this reference does not reasonably identify MacGlashan as the nurse who committed the alleged HIPAA violation.[3] *See Louisville Times v. Stivers*, 68 S.W.2d 411 (Ky. App.

---

[3] MacGlashan also argues that the entire HHS report was not produced, and that MacGlashan may be identified in the remainder of the report. This is mere speculation

1934).

### B. MacGlashan's self-publication.

Cumberland Hall next argues that it cannot legally be held liable for MacGlashan's self-publication of defamatory statements. Compelled self-publication of defamatory statements occurs when a discharged employee is "effectively coerced" into repeating the defamatory statements when the employee explains to a new employer why the employee was fired. *Polson v. Davis*, 635 F. Supp. 1130, 1147 (D. Kan. 1986).

There is no consensus among the states whether compelled self-publication is a legal theory that can support a defamation claim, and persuasive arguments exist both for and against the theory, especially in the context of an employer-employee relationship. *Id.*; Markita d. Cooper, *Between a Rock and a Hard Case: Time for a New Doctrine of Compelled Self-Publication*, 72 Notre Dame L. Rev. 373, 391 (1997); Louis B. Eble, *Self-Publication Defamation: Employee Right or Employee Burden?* 47 Baylor L. Rev. 745, 749 (1995).

Kentucky adopted the theory of compelled self-publication, albeit under different circumstances. In *Wortham*, a man received a letter containing defamatory language. *Allen v. Wortham*, 13 S.W. 73, 73-74 (1890). The man, being illiterate, asked another to read the letter to him, and in doing so the other person was exposed to the defamatory language. *Id*. The court held the plaintiff had a claim, despite his own actions causing the letter to be published, because the publication was the "inevitable consequence" of defendants' actions. *Id*.

---

and is insufficient to survive summary judgment. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

MacGlashan has failed to present sufficient evidence to support her claim of defamation based on compelled self-publication. Although MacGlashan says she has applied to forty medical positions, she does not claim she ever actually disclosed to prospective employers the reason why she was terminated by Cumberland Hall. (Docket #53, Ex. 1, p. 43). MacGlashan also admits that no potential employer has contacted her to say she was not hired for her alleged HIPAA violation. (Docket #53, Ex. 1, p. 43).[4] MacGlashan's compelled self-publication claim fails because MacGlashan has not presented any evidence that she ever repeated the allegedly defamatory comments. *See e.g. Neighbors v. Kirksville College of Osteopathic Medicine*, 694 S.W.2d 822, 824 (Mo. App. 1985) ("The petition alleged that the letter was given to Neighbors to serve as a reference in her effort to find another job, and further alleged that the letter was in fact read by prospective employers").

### C. Qualified privilege.

MacGlashan's final defamation claim is that she was defamed when Cumberland Hall told its employees that MacGlashan was fired for violating HIPAA. MacGlashan relies on the expert opinion of Lisa Dahm, who opines that MacGlashan's actions do not violate HIPAA. (Docket #47-5). Cumberland Hall argues that these statements are protected by a qualified privilege.

"Kentucky courts have recognized a qualified privilege for defamatory statements

---

[4] MacGlashan also acknowledged that her nursing license does not show any negative marks. (Docket #53, Ex. 1, p. 44). It is unclear to the Court if a HIPAA violation would appear there.

relating to the conduct of employees."[5] *Stringer*, 151 S.W.3d at 796; *see also Hawkins v. Miller*, 301 S.W.3d 507, 509 (Ky. App. 2009) (holding statements made in an unemployment hearing were protected by a qualified privilege). This privilege puts the "burden . . . on the plaintiff to prove actual malice." *Harstad*, 338 S.W.3d at 810 (quoting *Weinstein v. Rhorer*, 240 Ky. 679, 42 S.W.2d 892, 895 (1931)). The "key word is 'qualified,' and the privilege can be lost if abused or exceeded." *Stringer*, 151 S.W.3d at 797. Abuse may be shown in several ways, including "(1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged." *Toler v. Süd-Chemie, Inc.*, 2014 Ky. LEXIS 610 *14-15 (Ky. 2014) (citing Restatement (Second) of Torts § 596 cmt. a (1977)).

MacGlashan claims Cumberland Hall blamed MacGlashan for violating HIPAA to deflect attention away from Cumberland Hall's own errors in treating the patient. (Docket #53). MacGlashan points out that she was not given a reason for her suspension, which Spruyt and Shemwell confirm. (Docket #53, Ex. 1, p. 178; Ex. 3, p. 71, Ex. 6, p. 34). MacGlashan argues she was first informed of her alleged HIPAA violation when she was terminated six days later. MacGlashan further claims that Cumberland Hall's alleged delay in reporting the medical error and the hurried preparation of "attestation document," in which each nurse signed off that they were aware of the policy for

---

[5] Without this privilege, MacGlashan would be relieved of proving malice because if a defamatory statement "concerns untrue allegations of . . . unfitness to perform a job," then "proof of context indicating malice is not required." *Harstad*, 338 S.W.3d at 810.

checking for allergies are evidence that Cumberland Hall was attempting to conceal its error. (Docket #53, Ex. 1). Finally, MacGlashan relies on the expert opinion of Lisa Dahm that MacGlashan's actions did not violate HIPAA.

In large part, MacGlashan's arguments presume "malice necessary to overcome a qualified privilege can be inferred from the fact that the defamatory communication is false." (Docket #53). The Kentucky Supreme Court, a mere four days before MacGlashan filed her response, decided the *Toler* case, which stated:

> To the extent that *Stringer* stands for a perpetuation of allowing the mere allegation of falsity to permit an inference of malice, it is overruled. Within its scope, the qualified privilege permits defamatory statements. After all, *defame* means "to make a *false* statement about someone to a third person in such a way as to harm the reputation of the person spoken of." *Toler v. Süd-Chemie, Inc.*, 2014 Ky. LEXIS 610 *21 (Ky. 2014) (*quoting* Bryan A. Garner, Garner's Dictionary of Modern Legal Usage (3d ed. 2011) (emphasis added)).

MacGlashan has not had an opportunity to argue the *Toler* decision. The defendant's claim is a close call. The Court feels it should hear all the evidence before deciding whether MacGlashan has met the rather high standards of proving actual malice.

### IV. Emotional Distress Claim.

Finally, Cumberland Hall argues MacGlashan's claim for emotion distress should be denied because MacGlashan has not presented expert testimony to support her claim. In support, Cumberland Hall cites to *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012). The *Osborne* case involved a woman's claim for negligent infliction of emotional distress ("NEID") when a plane crashed into her living room.[6] The *Osborne* court stated a plaintiff could not recover "without showing, by expert or scientific proof, that the claimed emotional injury is severe or serious." *Id*. at 6. The question is whether

---

[6] More accurately, the woman's claim was against her attorney for not filing her NEID claim within the statute of limitations.

14

*Osborne*'s requirement of expert testimony applies in all cases in which emotional damages are claimed, or whether *Osborne* is limited to plaintiffs asserting claims for negligent infliction of emotional distress.

At least one court has held that *Osborne* requires all plaintiffs claiming emotional damages must provide expert support. *Sergent v. ICG Knott County, LLC*, 2013 U.S. Dist. LEXIS 173102 (E.D. Ky. 2013). However, there are reasons to doubt *Sergent*'s interpretation of *Osborne*. *Sergent*'s rationale is that the *Osborne* court stated: "A plaintiff claiming emotional distress must . . . show a severe or serious emotional injury, supported by expert evidence." *Id*. (quoting *Osborne*, 399 S.W.3d at 23). Since the *Osborne* court "gave no indication that the expert-testimony requirement is limited" to negligent infliction of emotional distress cases, then this new rule should apply to all cases. *Id*. at 17. This interpretation is questionable because the *Osborne* court was clearly talking in the context of an NIED claim. The full quote from *Osborne* states: "A plaintiff claiming emotional distress **must satisfy the elements of a general negligence claim**, as well as show a severe or serious emotional injury, supported by expert evidence." (emphasis added) *Osborne*, 399 S.W.3d at 23.

Other courts have rejected *Sergent*'s interpretation of *Osborne*. *Minter v. Liberty Mut. Fire Ins. Co.*, 2014 U.S. Dist. LEXIS 137741 *12-13 (W.D. Ky. 2014); *Smith v. Walle Corp.*, 2014 U.S. Dist. LEXIS 156859 *9-11 (E.D. Ky. 2014) (acknowledging *Osborne* and *Sergent* but expressly rejecting defendant's argument that plaintiff must provide expert testimony to support emotional damages in a discrimination case). This Court joins the latter group in holding *Osborne*'s requirement for expert testimony is limited to NIED and intentional infliction of emotional distress claims. As the *Minter*

court stated: "The high standard makes sense in those cases, as the elements of such a claim specifically require 'severe or serious emotional injury.'" 2014 U.S. Dist. LEXIS 137741 *12.

## CONCLUSION

MacGlashan has presented insufficient evidence to support her defamation claims based on the report to Health and Human Services and MacGlashan's alleged self-publication. Accordingly, Cumberland Hall is entitled to summary judgment on these claims. MacGlashan's claims for retaliation, public policy wrongful discharge, and emotional damages survive. At the close of trial the Court will readdress MacGlashan's claim that Cumberland Hall's statements to employees were defamatory and in abuse of Cumberland Hall's privilege to make such statements. For the foregoing reasons, Defendant's motion for summary judgment (Docket #48) is GRANTED in part and DENIED in part.

cc:    Counsel